**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

METROPCS INC., a Delaware Corporation,

    Plaintiff,

    v.

THE CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA and THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO,

    Defendants.
_____/

No. C 02-3442 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART AND DENYING JURY DEMAND**

Defendants' motion for partial summary judgment and plaintiff's jury demand came on for hearing before this court on February 8, 2006. Plaintiff appeared through its counsel, Martin L. Fineman. Defendants appeared through their counsel, William K. Sanders. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART and DENIES IN PART defendants' motion and DENIES plaintiff's jury demand as follows, and for the reasons stated at the hearing.

## BACKGROUND

This is an action brought under the Telecommunications Act of 1996 ("TCA"). Plaintiff, MetroPCS ("MetroPCS"), is a personal wireless service provider in San Francisco. Defendants are the City and County of San Francisco, and the Board of Supervisors of the City and County of San Francisco (the "Board") (all defendants collectively referred to as the "City").

On two separate occasions, MetroPCS applied for Conditional Use Permits ("CUP"s)

in order to install wireless telecommunications facilities, one which would be installed on Geary Street, and the other which would be installed on Pierce Street.  After having both CUP applications granted by the SF Planning Commission, the CUP applications were appealed to the Board of Supervisors.  After public hearings on the issue – during which numerous residents' testimony was heard – the Board overturned the decisions of the SF Planning Commission and denied the CUPs.

In conjunction with the Pierce Street CUP application, MetroPCS had also entered into negotiation with the City to obtain a lease to use the site upon which its proposed wireless facility would be installed.  Despite having neared completion regarding the lease negotiations, MetroPCS was unable to finalize the lease after the Board denied its CUP application.

## **PROCEDURAL HISTORY**

On July 17, 2002, MetroPCS filed its initial complaint, alleging numerous causes of action – including one under the TCA, 47 U.S.C. § 332(c)(7) – in conjunction with the denial of its CUPs on Geary Street and Pierce Street.  The City moved to dismiss MetroPCS' TCA claim under section 332(c)(7) with respect to the Pierce Street denial, which the court granted on October 30, 2002.

Subsequently, the parties filed cross-motions for summary judgment on the section 332(c)(7) claim concerning the Geary Street site.  The court granted in part and denied in part the motions, ruling in favor of the City on all grounds, except for a finding that triable issues of fact existed as to whether the City's denial of the Geary Street CUP prohibited or effectively prohibited the provision of wireless services.  The Ninth Circuit affirmed that decision on all grounds, except as to the question of whether the City unreasonably discriminated among wireless service providers when it denied MetroPCS's application.  The Ninth Circuit found triable issues of fact on that issue as well, and remanded the case.  See MetroPCS v. City and County of San Francisco, 400 F.3d 715 (9th Cir. 2005) ("MetroPCS").

After the case was remanded, the City moved to dismiss MetroPCS' other claims based on 47 U.S.C. § 253(a) and 42 U.S.C. § 1983. On July 18, 2005, the court granted the City's motion to dismiss the section 253(a) claim with leave to amend. The court stated that in repleading the claim, MetroPCS would have to show that the City "has put in place a policy that prohibits or has the effect of prohibiting the provision of telecommunication service, as opposed to merely making decisions on MetroPCS' applications." With respect to the section 1983 claim based on equal protection, the court granted in part and denied in part the City's motion, stating that the complaint sufficiently alleged that MetroPCS "was intentionally treated differently from other wireless service providers similarly situated to it, and that there was no rational basis for this difference in treatment."

On August 19, MetroPCS filed its second amended complaint ("SAC"), the operative complaint at issue here. In that complaint, MetroPCS asserts only three causes of action: (1) violation of the TCA, 47 U.S.C. § 332(c)(7)(B) (first cause of action); (2) violation of the Communications Act, 47 U.S.C. § 253(a) (second cause of action); and (3) violation of 42 U.S.C. § 1983 (third cause of action). The first claim is based on allegations regarding denial of the Geary Street CUP only, while the latter two claims are based on allegations regarding both the Geary Street and Pierce Street CUP denials, as well as denial of the Pierce Street lease.

The City now moves for summary judgment on the latter two claims.[1] In conjunction with the City's motion for summary judgment, MetroPCS has also filed a separate motion requesting a jury trial on all claims.

**DISCUSSION**

**A.  Legal Standard**

Summary judgment shall be granted if "the pleadings, depositions, answers to

---

[1] The City has also concurrently filed: (1) a request for judicial notice of certain sections of the San Francisco Planning Code, Charter, and Board motions and resolutions; (2) a request for leave to file certain documents under seal; and (3) objections to evidence. The court hereby: (1) GRANTS the request for judicial notice; (2) DENIES the request to file under seal; and (3) OVERRULES the objections to evidence.

3

1 interrogatories, and admissions on file, together with the affidavits, if any, show that there is
2 no genuine issue as to any material fact and that the moving party is entitled to judgment
3 as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of
4 the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to
5 a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
6 verdict for the nonmoving party. Id. The court must view the facts in the light most
7 favorable to the non-moving party and give it the benefit of all reasonable inferences to be
8 drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
9 587 (1986).

### B. Preemption Claim

Title 47 U.S.C. § 253(a) of the Telecommunications Act provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." The provision preempts all local ordinances or regulations that "not only prohibit outright the ability of any entity to provide telecommunications services, but also those that ... '*may* ... have the effect of prohibiting the provision of such services.'" See Qwest Corp. v. City of Portland, 385 F.3d 1236, 1239 (9th Cir. 2004); Qwest Commc'ns Inc. v. City of Berkeley, 433 F.3d 1253 (9th Cir. 2006). Its purpose is to "prevent explicit prohibitions on entry by a utility into telecommunications, and thereby to protect competition in the industry while allowing states to regulate to protect consumers...". Commc'n Telesystems Int'l v. Cal. Pub. Util. Comm'n, 196 F.3d 1011, 1017 (9th Cir. 1999).

The court has had occasion to pass on this provision in the context of this case once before, on the City's earlier motion to dismiss this cause of action from MetroPCS' complaint. In dismissing the claim with leave to amend, the court considered the Ninth Circuit's MetroPCS decision and explicitly held that MetroPCS cannot state a claim under section 253(a) based on the same predicate facts as those alleged in support of MetroPCS' claim under 47 U.S.C. § 332(c)(7). See July 18, 2005 Order Granting Defendants' Motion

4

to Dismiss at 3:17-18. Accordingly, the court granted leave to amend on the theory that MetroPCS might be able to state facts "supporting an allegation that the City has put in place a policy that prohibits or has the effect of prohibiting the provision of telecommunication services, as opposed to merely making decisions on MetroPCS' applications." Id. at 3:19-22.

MetroPCS now alleges in its second amended complaint that the City has a "de facto policy" of "denying issuance of [CUPs] ... whenever the Board determines" that the services to be provided will be redundant to those already provided by wireless service providers, or "in any circumstance in which community members express opposition" to the proposed facility. See SAC, ¶ 42. According to MetroPCS, this "de facto policy" is responsible for the denials of its CUP applications regarding the Geary and Pierce Street sites, as well as for the failure to approve the Pierce Street lease.[2] Id. at ¶¶ 43-44. MetroPCS provides no proof of any concrete "policy" or ordinance or regulation, but rather attempts to prove its claim by stating that it cannot provide adequate wireless services or meet its FCC obligations due to the "significant gap" that exists in its network without the necessary CUPs, and that this is enough to constitute a sufficient barrier for purposes of § 253(a). See, e.g., Declaration of Martin L. Fineman in Support of Plaintiff MetroPCS Inc.'s Opposition to Defendants' Motion for Partial Summary Judgment ("Fineman Decl."), Ex. B, ¶ 8.

The City contends that the purported de facto policy is not actionable under § 253(a) because MetroPCS' arguments in support of this claim – in particular, its "significant gap" analysis – are impermissibly predicated on the same facts as those that MetroPCS

---

[2] With respect to the Pierce Street lease, the court ordered in an earlier motion to dismiss that MetroPCS lacks standing to bring its claims regarding the lease, given that it never actually received any lease over which to sue. See October 30, 2002 Order Granting motion to Dismiss [12(b)(1)] at 2:22-5:4. While that order considered MetroPCS' 332(c)(7) claim, the same holding applies here, since the conduct MetroPCS complains of with respect to its § 253(a) claim is, as explained herein, virtually identical to its section 332(c)(7) claim. Accordingly, the court considers the parties' arguments with respect to the Board's denials of the CUP applications at the Geary Street and Pierce Street sites alone.

marshals in support of its claim under the anti-prohibition prong of section 332(c)(7). The City also argues that, since MetroPCS' alleged de facto policy is premised on the Board's consideration of existing wireless capability surrounding proposed facilities and on the extent of community opposition, MetroPCS is improperly basing its claim on the necessity standard set forth in section 303 of the SF Planning Code, expressly sanctioned by the Ninth Circuit in MetroPCS.

The City is correct. The "significant gap" evidence that MetroPCS purports to introduce in support of its de facto policy is identical to the traditional analysis employed under the anti-prohibition provision codified at 47 U.S.C. § 332(c)(7). But MetroPCS cites no authority to support its position that the "significant gap" analysis suffices under § 253(a) as a basis to prove prohibition. Indeed, this argument appears to have been expressly rejected by the Ninth Circuit in MetroPCS. There, the court explicitly stated, in considering MetroPCS' independent preemption challenge to the Board's CUP denial based on necessity, that the TCA "fully accommodates [] preemption concerns in the anti-prohibition and anti-discrimination provisions" of 47 U.S.C. § 332(c)(7). See MetroPCS, 400 F.3d at 735. Specifically, "a zoning decision to prohibit construction of a wireless facility at a specific location – whether based on necessity or not – does not implicate the [federal government's] ability to regulate the number of wireless providers in a given market." See id. As such, MetroPCS' arguments here in support of a de facto policy do not allege any claim independent of a section 332 claim. The section 253(a) claim therefore fails.

Moreover, to the extent MetroPCS' alleged de facto policy is based on consideration of community concerns and existing wireless services in a community, such a policy overlaps with the necessity standard set forth in the San Francisco Planning Code and utilized by the Board in evaluating CUP applications. See S.F. Planning Code § 303(c)(1) (authorizing consideration of whether a proposed facility "is necessary or desirable for, and compatible with, the neighborhood or the community"). As the City points out, the Ninth Circuit in MetroPCS expressly held that the "necessity-based portion of the Board's

1  decision was clearly authorized by [San Francisco Planning Code § 303(c)(1)." See
2  MetroPCS, 400 F.3d at 725.  Although this finding resulted from consideration of
3  MetroPCS' section 332(c)(7) claim, and not from a section 253(a) claim, the Ninth Circuit
4  nonetheless expressly recognized that the criterion used by the Board in deciding CUP
5  applications is valid.  This holding controls here as well.
6       Accordingly, for the above reasons, the court GRANTS summary judgment in favor
7  of the City as to MetroPCS' preemption claim under section 253(a).

### C.   Equal Protection Claim

The parties agree that in order for MetroPCS to succeed on its section 1983 claim alleging denial of equal protection, MetroPCS must establish "that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  See Opening Br. at 21:16-18; Opp. Br. at 15:19-21.  If the City proves a rational basis, it is up to MetroPCS to demonstrate that the rational basis is a "pretext."

The issue for the court is twofold:  first, whether there is sufficient evidence to prove a rational basis for the Board's decision to deny both CUP applications, or for denial of the Pierce Street lease.  Second, whether there is sufficient evidence demonstrating that the Board's decisions as to the CUP denials and the Pierce Street lease were a pretext.  The court considers both questions with respect to the CUP denials, and the Pierce Street lease, respectively.

#### 1.   CUP Denials

With respect to the Geary Street CUP denial, the City contends that the Ninth Circuit's holding in MetroPCS that the Board's decision was based on substantial evidence should be dispositive on the issue whether a rational basis exists.  See MetroPCS, 400 F.3d at 723-26 (affirming "that the Board's decision was supported by 'substantial evidence' as required by the TCA").  MetroPCS responds that since the Ninth Circuit found triable issues of fact on the discrimination claim, those factual issues are evidence that the City is

discriminating against MetroPCS for equal protection purposes.  See, e.g., id. at 729-30.

Given the lack of case law either on point or cited by the parties, the court finds the City to present the more persuasive argument.  The "substantial evidence" standard that the Ninth Circuit held was met in this case comes the closest, analogously, to a "rational basis" standard.  See MetroPCS, 400 F.3d at 723-26.  Moreover, although the Ninth Circuit did find triable issues as to the discrimination claim under section 332(c)(7) of the TCA, MetroPCS presents no argument or authority as to why, or how, those triable issues counsel against a finding of rational basis.  Indeed, it appears to want to argue that the issues themselves are proof of discrimination, without tailoring its argument to the "rational basis" inquiry required by equal protection analysis.  This is improper.  In short, the court finds that the Ninth Circuit's "substantial evidence" finding with respect to the Board's denial of the Geary Street CUP also supports a finding that the Board had a rational basis for its actions.

With respect to the Pierce Street CUP denial, the Ninth Circuit did not have occasion to consider whether substantial evidence supported the Board's decision on this issue. Accordingly, the court must evaluate first hand the evidence considered by the Board in determining whether a rational basis exists.  The Board considered the following evidence in support of the CUP denial:  that at least five other wireless telecommunications providers offered adequate services; that MetroPCS would be able to provide "full coverage" without a wireless facility at the Pierce site; that MetroPCS' technical evidence was insufficient; and resident testimony that the proposed facility would be intrusive and oppressive, would be a visual blight, and is not in conformity with the neighborhood.  See Op. Br. at 10-11.  In view of this evidence, as well as the substantial evidence standards enunciated in the Ninth Circuit's decision in MetroPCS, it simply cannot be said that there is any evidence of anything other than a rational basis for the Board's decision.

As such, the only remaining issue regarding the CUP denials is whether MetroPCS can show that the bases for the Board's decisions were mere pretexts.

8

First, with respect to the Geary Street CUP denial, the court finds that MetroPCS states material factual disputes. As both parties agree, MetroPCS can establish a triable issue of fact on the issue of pretext by demonstrating "objective falsity." See Squaw Valley Develop. Co. v. Goldberg, 375 F.3d 936, 946 (9th Cir. 2004). MetroPCS does so here. It refers to pictures, maps, and deposition testimony from some of the City's own witnesses demonstrating that many of the justifications given by the Board for its decision were not true. See, e.g., Fineman Decl., Ex. D at 5:16-19, 97:15-98:12, 98:24-99:4. Although the City contends in response that the testimony of numerous residents prove that the Board's findings are not objectively false, this is a material dispute that should be decided at trial. See, e.g. Op. Br. at 24:4-7.

Second, with respect to the Pierce Street denial, unlike its showing in connection with the Geary Street site, MetroPCS fails to demonstrate in its opposition that it has facts demonstrating the objective falsity of (i.e., pretext) the Board's decision. Given the lack of any evidence introduced by MetroPCS as to pretext in connection with the Pierce Street CUP denial, this particular issue is decided in favor of the City.

Accordingly, for the above reasons, the court DENIES summary judgment to the City on MetroPCS' section 1983 equal protection claim in connection with the Geary Street CUP denial (on the pretext issue only), and GRANTS summary judgment to the City on MetroPCS' section 1983 equal protection claim in connection with the Pierce Street CUP denial.

        2. <u>Pierce Street Lease</u>

MetroPCS also claims that the City violated the equal protection clause in connection with the Pierce Street lease. Specifically, MetroPCS contends that discriminatory treatment has occurred in view of the fact that Sprint received an identical lease for the same site, but MetroPCS was denied. The City does not deny that Sprint received the identical lease, but states that no discrimination occurred because both leases were contingent upon the grant of a successful permit, and only Sprint was successful in

9

acquiring such.

It is undisputed that after the Board upheld the denial of MetroPCS' CUP in connection with the Pierce Street site, MetroPCS sent, of its own volition, a letter to the City stating as follows: "As you are probably aware, the Board of Supervisors upheld the appeal of the neighbors at the Pierce Street Garage. As such, I am requesting that you return the MetroPCS executed original leases to me at the above address." See Declaration of Lawrence Jacobson in Support of Defendants' Motion for Partial Summary Judgment ("Jacobson Decl."), Ex. D. Although MetroPCS attempts to claim that this letter in no way implied MetroPCS' withdrawal from lease negotiations, this argument is unpersuasive and contradicts any reasonable construction of the letter. In short, the letter is dispositive proof that the failure to finally execute the lease at the Pierce Street Garage was not due to the discriminatory actions of the City, but rather to MetroPCS' own withdrawal from the lease process after it could not secure a CUP at the Pierce Street site.

Accordingly, the court GRANTS summary judgment to the City on MetroPCS' section 1983 equal protection claim in connection with the Pierce Street lease.

**D.   Jury Demand**

In addition to the motion for summary judgment, MetroPCS requests a jury trial on all claims. The only remaining claims for trial are MetroPCS' claims for violation of section 332(c)(7) of the TCA, and for violation of section 1983. Both are statutory claims. The City opposes MetroPCS' request, contending that neither statute explicitly grants a right to jury trial, and that MetroPCS' failure to request anything other than legal relief is fatal to its request.

Where, as here, a statute providing for a cause of action is silent as to the right to a jury trial, the court must engage in a Seventh Amendment analysis to determine whether a jury trial is constitutionally mandated. See, e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707-08 (1999); Feltner v. Columbia Pictures Television, Inc. 523 U.S. 340 (1999). The Seventh Amendment provides that "[i]n Suits at common law,

where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Constitution, Amend. VII. The Supreme Court and the Ninth Circuit have interpreted "Suits at common law" to refer to "'suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." See, e.g., Simpson v. Office of Thrift Supervision, 29 F.3d 1418, 1423 (9th Cir. 1994).

Here, as the City points out, and as MetroPCS' counsel explicitly conceded at the hearing on this matter, MetroPCS seeks only equitable relief. While the court assumes without deciding that, under the above case law, a right to jury trial attaches to suits under the TCA or section 1983 in which legal relief is sought, neither party has been able to find any case law discussing a right to jury trial under the TCA or section 1983 where only equitable relief is sought. However, given the case law establishing that the Seventh Amendment right to a jury trial extends to cases in which at least some legal relief is sought *as contrasted* with cases in which *only* equitable relief is sought, the court finds that MetroPCS' decision to restrict its remedies to equitable relief alone precludes it from seeking a jury trial.

Accordingly, MetroPCS' request for a jury trial is DENIED.

**E.     Conclusion**

For the above reasons, the court hereby rules as follows:

1. Summary judgment is GRANTED on MetroPCS' second claim for relief under section 253(a);

2. Summary judgment is DENIED on MetroPCS' third claim for relief under section 1983 in connection with the Geary Street CUP denial, as to the pretext issue only;

3. Summary judgment is GRANTED on MetroPCS' third claim for relief under section 1983 in connection with the Pierce Street CUP denial, as well as the Pierce Street lease; and

11

4. MetroPCS' request for a jury trial is DENIED.

**F. Scheduling**

In light of the March 9, 2006 pretrial date, the case management and pretrial order is modified as follows:

Pretrial papers including any motions in limine shall be filed by 3:00 p.m. on February 24, 2006. Any opposition to motions in limine shall be filed by 3:00 p.m. on March 3, 2006.

The parties need not file proposed findings of fact or conclusions of law before trial, but will instead be permitted to file them after the trial has concluded.

**IT IS SO ORDERED.**

Dated: February 15, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge